IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| YOHAN WEBB,<br><br>                Plaintiff,<br><br>      vs.<br><br>BRAD JOHNSON, Director (Classification Member); ANGELA O'BRYAN, Correctional Officer (Classification Member); and UNKNOWN CLASSIFICATION MEMBERS, Correctional Officers;<br><br>                Defendants. | **4:22CV3175**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Yohan Webb filed a Complaint on August 22, 2022, while he was confined as a pretrial detainee in the Lancaster County Department of Corrections ("LCDC"). Filing No. 1. On August 26, 2022, the Court received notice that Plaintiff was no longer incarcerated in the LCDC. *See* Filing No. 6. Plaintiff updated his address, indicating he was no longer incarcerated, Filing No. 8, and he was subsequently given leave to proceed in forma pauperis as a nonprisoner, Filing No. 10. The Court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e).

**I. SUMMARY OF COMPLAINT**

Plaintiff sues Director Brad Johnson ("Johnson"), Correctional Officer Angela O'Bryan ("O'Bryan"), and "Unknown Classification Members" of the LCDC in their individual and official capacities for events occurring at the LCDC between July 25, 2018 and September 9, 2018. Filing No. 1 at 2–4. Johnson, O'Bryan, and the Unknown

Classification Members are all members of the "Classification Committee" which is responsible for, and must approve, all housing classifications in the LCDC. *Id.* at 13.

Plaintiff alleges he was admitted into the LCDC Adult Detention Facility ("ADF") on July 25, 2018, and was moved in late July or early August from booking to "General Population (Pod-R)" and placed in a cell near the showers. *Id.* at 12. Within minutes of being placed in the Pod-R cell, O'Bryan questioned Plaintiff about his placement in the cell. A few minutes thereafter, Plaintiff was escorted by two male correctional officers to a cell in the medical unit. Plaintiff asked a nurse why he was brought to the medical unit, and the nurse informed him, "You're on suicide watch!" *Id.* Plaintiff alleges he kept his clothes and "everything in the room that would have been excluded 'if' suicide protocols were followed which they were not, and this cell was extremely cold." *Id.* After one or two days, Plaintiff was removed from the medical cell and brought to Pod S3 Cell S3-48 or 49, which is within an administrative segregation unit. *Id.* at 12–13. Thereafter, Plaintiff was placed in Pod S3 Cell S3-46 and a month later was placed in Pod S1 until his release on September 9, 2018, both of which are administrative segregation units. *Id.*

Plaintiff alleges there was no required written report for medical behavioral classification to move him to suicide watch in the medical unit nor were there any required disciplinary reports to place him in any of the administrative segregation placements. *Id.* at 13. Plaintiff further alleges:

> All these specific cell movements and change in housing classification were either done by CO O'Bryan alone in violating the policy and classification procedures which must be followed or was in conjunction with the some or all other Classification Committee members.
>
> Overall, Plaintiff received no notices, reviews, or hearings in relations to the procedures, protocols, or policies that are required by the ADF, and I am similarly situated to other pre-trial detainees who have these

2

> procedures, protocols, or policies applied to them that were not applied to me. They received reviews, etc. when I was not afforded the same treatment, and there is no reason for the Defendants to treat me any differently, but they did.

Id. at 14 (punctuation corrected). Plaintiff does not allege that he sustained any injuries as a result of the different cell placements and housing classifications. Id. at 5 (writing "N/A" in space provided to describe injuries).

As relief, Plaintiff states he "is seeking compensatory, injunctive, and punitive relief from each Defendant." Id. at 16. However, Plaintiff does not specify what he seeks to enjoin but rather attaches dollar figures to his requests for injunctive relief. See, e.g., Id. at 17 ("Plaintiff seeks injunctive relief from the Defendants in the amount of $20,000.00."). Therefore, the Court will assume Plaintiff actually asserts claims for money damages instead of injunctive relief.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. See 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569-70 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

3

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION OF CLAIMS

Plaintiff sues Johnson, O'Bryan, and the Unknown Classification Members in their official and individual capacities for alleged violations of his due process and equal protection rights under the Fifth and Fourteenth Amendments and his right to be free of cruel and unusual punishment under the Eighth Amendment. For the reasons that follow, the Court finds the Complaint fails to state a plausible claim for relief under any of these provisions.

**A. Eighth Amendment**

As an initial matter, a convicted prisoner's conditions of confinement are subject to scrutiny under the Eighth Amendment's prohibition against cruel and unusual

punishment. However, where a pretrial detainee is involved, the detainee's challenge to such conditions is analyzed under the Due Process Clause of the Fifth Amendment (with respect to federal actors) or the Fourteenth Amendment (with respect to state actors), as in this case. See *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (Eighth Amendment has no application until there has been formal adjudication of guilt); *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). There is no allegation that any portion of Plaintiff's confinement were part of a sentence imposed as part of a finding of guilt. Therefore, Plaintiff's claims under the Eighth Amendment may be dismissed.

**B. Official Capacity Claims**

Plaintiff's claims against the Defendants in their official capacities are claims against Defendants' employer, Lancaster County. To prevail on a claim alleged against Lancaster County, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

> Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's

5

custom, i.e., that the custom was a moving force behind the constitutional violation."

Malone v. Hinman, 847 F.3d 949, 955 (8th Cir. 2017) (quoting Corwin, 829 F.3d at 699–700).[1]

Plaintiff's Complaint does not contain any facts from which it might reasonably be inferred that Lancaster County had an unconstitutional policy or custom which caused the alleged violations of Plaintiff's rights. Crumpley Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom."); see also Iqbal, 556 U.S. at 679 ("[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))). Rather, Plaintiff alleges that his rights were violated due to Defendants' failure to follow established policy and classification procedures. See Filing No. 1 at 14. Therefore, Plaintiff has failed to state a claim for relief against Defendants in their official capacities.

## C. Claims Raised in Related Litigation

Plaintiff previously filed suit in this Court against several defendants, including Johnson and O'Bryan, for "claims arising from his alleged unlawful confinement from July 25, 2018, to September 9, 2018." Webb v. Nebraska, No. 4:21CV3031, 2021 WL 5163301, at *2 (D. Neb. Nov. 5, 2021), *reconsideration denied sub nom. Webb v. City of*

---

[1] A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. Marsh v. Phelps Cty., 902 F.3d 745, 751 (8th Cir. 2018); see City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").

*Lincoln*, No. 4:21CV3031, 2022 WL 43670 (D. Neb. Jan. 5, 2022). In that case, 4:21CV3031, the Court reviewed Plaintiff's amended complaint and summarized his claims, in relevant part, as follows:

> After two to three days in POD-R, Plaintiff alleges that Defendant O'Bryan, a correctional officer, moved him from POD-R to Medical (where Plaintiff was placed on suicide watch) and then to POD-S, where Plaintiff stayed until September 9, 2018. Plaintiff claims O'Bryan did not comply with "policy, procedures, or medical protocols" in moving him from cell to cell, and Defendants Brad Johnson, Rick Grey, Ken Prey, and an unnamed classification training officer knew of O'Bryan's actions, but failed to take corrective actions as his superiors.

*Id.* The Court then went on to dismiss Plaintiff's claims against Johnson and O'Bryan without prejudice[2] and explained its reasoning as follows:

> **9. Lancaster County Jail Administrators**
>
> Plaintiff sues Brad Johnson, Director of the Lancaster County Department of Corrections; Lancaster County Jail administrators Rick Grey and Ken Prey; and an unknown classification training officer in their official and individual capacities for being "aware" of the actions of Lancaster County Jail correctional officer O'Bryan, "which did not conform to policy, procedures, or medical protocols." Plaintiff also alleges that Johnson, Grey, and Prey "failed to take corrective actions in the matter as 'immediate' superiors" of O'Bryan, and the unknown classification training officer failed to train O'Bryan "in the use of policy, procedure, or medical protocols." (Filing 44 at CM/ECF p. 17.)
>
> As discussed above, since there are no facts alleged in Plaintiff's Complaint which would support a finding of liability against Lancaster County (which is the entity effectively sued when one brings claims against county administrators in their official capacities), Plaintiff has failed to state a claim upon which relief can be granted against Defendants Johnson, Grey, Prey, and the unknown classification training officer in their official capacities.
>
> Further, because Defendant O'Bryan cannot be liable under section 1983 for violating jail policy, procedures, or protocols, Defendants Johnson, Grey, Prey, and the unknown classification training officer also cannot be liable

---

[2] Other claims asserted by Plaintiff were allowed to proceed, including a Fourteenth Amendment claim "regarding the conditions of his confinement while he purportedly was on 'suicide watch' at the jail." *Webb*, No. 4:21CV3031, 2021 WL 5163301, at *9. The matter remains pending disposition of two summary judgment motions filed by the defendants. *See* Filing Nos. 173 & 176, Case No. 4:21CV3031.

7

for being "aware" of or failing to correct these alleged violations or for failing to train O'Bryan on internal jail policy, regulations, and protocol. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (holding that prisoners do not have a due process right to enforce compliance with internal prison rules or regulations); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("there is no § 1983 liability for violating prison policy"); *see also Hughes*[ *v. Stottlemyre*], 454 F.3d [791,] 798 [(8th Cir. 2006)] ("It is well settled that § 1983 does not impose respondeat superior liability." (internal quotation marks omitted)).

Therefore, Plaintiff has failed to state a claim upon which relief can be granted against Defendants Johnson, Grey, Prey, and the unknown classification training officer in their official and individual capacities.

**10. Lancaster County Correctional Officers**

Plaintiff sues Officer O'Bryan, unknown Lancaster County Jail correctional officers, and an unknown Lancaster County Jail correction training officer. Plaintiff alleges that Defendant O'Bryan moved him from POD-R to Medical (where Plaintiff was placed on suicide watch) and then to POD-S, where Plaintiff stayed until September 9, 2018. Plaintiff claims O'Bryan did not comply with "policy, procedures, or medical protocols" in moving him from cell to cell. . . .

As discussed above, since there are no facts alleged in Plaintiff's Complaint which would support a finding of liability against Lancaster County (which is the entity effectively sued when one brings claims against county employees in their official capacities), Plaintiff has failed to state a claim upon which relief can be granted against these Defendants in their official capacities. As also discussed above, because Defendant O'Bryan cannot be held liable under section 1983 in [her] individual capacity for violating jail policy, procedures, or protocols, Plaintiff has likewise failed to state a claim as to [her]. (Filing 44 at CM/ECF p. 17.)

*Webb*, No. 4:21CV3031, 2021 WL 5163301, at *7–8.

Here, to the extent Plaintiff claims that Johnson, O'Bryan, and the Unknown Classification Members failed to follow jail policies and procedures regarding placements in administrative segregation or on suicide watch or failed to properly train or supervise O'Bryan in making such placements, his claims fail for the same reasons previously explained by the Court in Case No. 4:21CV3031. That is, "there is no § 1983 liability for

8

violating prison policy." *Gardner*, 109 F.3d at 430. Rather, Plaintiff must establish that Defendants violated his due process or equal protection rights.

**D. Due Process**

Pursuant to the due process provisions of the Fourteenth Amendment, a pretrial detainee may not be punished prior to a determination of guilt in accordance with due process. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (requiring pretrial detainee to be placed in administrative segregation is punishment; claim that pretrial detainee was denied due process when placed in administrative detention for refusing to work did not lack arguable basis in law and should not have been dismissed prior to service). But "not every disability imposed during . . . detention amounts to 'punishment' in the constitutional sense.'" *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). "[I]f a particular condition or restriction of . . . detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id. See Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996) (holding that placement of a pretrial detainee in segregation for 13 days, was not "punishment" because it was done for the legitimate governmental objectives of monitoring the plaintiff's health and preventing him from harming other detainees); *Martinez*, 977 F.2d at 423 (remanding for a determination of whether the pretrial detainee was required to work as "punishment" or in furtherance of the legitimate governmental objective of "general housekeeping"); *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (explaining that placement of a pretrial detainee in disciplinary segregation is not "punishment" if it is done for legitimate institutional concerns such as preventing suicide, housing needs, or reducing danger to others).

Here, Plaintiff has alleged insufficient facts from which the Court could infer that his placements on suicide watch or in administrative segregation were intended as punishment. Though Plaintiff claims he was placed on suicide watch without a proper medical behavioral classification report, Plaintiff alleges he was allowed to keep his clothes and "everything in the room that would have been excluded 'if' suicide protocols were followed," Filing No. 1 at 12, which may remotely suggest an intent by Defendants to punish Plaintiff, but without more fails to nudge Plaintiff's claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 569–70. Plaintiff does allege that the cell was "extremely cold" but also that this was in late July or early August of 2018, he had all his clothes, and he was only in the cell for a day or two. Id. Plaintiff alleges no facts about the conditions he was subjected to while in administrative segregation or that they differed in any relevant respect from his placement in general population. Plaintiff also specifically alleges that his placements in administrative segregation were not the result of any disciplinary reports, which generally does not suggest an intent to punish, but may very tangentially suggest intent to punish. See Id. at 13.

The absence of any facts suggesting Plaintiff was subjected to any of the placements at issue for disciplinary reasons undermines his procedural due process claim from proceeding. "A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less." Higgs, 286 F.3d at 438. However,

> "not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996). Specifically, no due process is required if a pretrial detainee "is placed in segregation not as punishment but for managerial reasons" such as "to protect himself from other prisoners, or to protect jail staff from his violent propensities." Higgs, 286 F.3d at 438. This is because

10

> the placement in segregation is reasonably related to the legitimate governmental objective of maintaining order and security in the jail, and not for the purpose of punishing the detainee. See Bell, 441 U.S. at 538–40. Stated differently, due process is not necessary in the absence of punishment.

Hutchison v. Smith, No. 420CV00779LPRJJV, 2022 WL 4089457, at *4–5 (E.D. Ark. June 16, 2022), *report and recommendation adopted*, No. 4:20-CV-779-LPR, 2022 WL 4087644 (E.D. Ark. Sept. 6, 2022) (alteration in original omitted) (citing Whitfield v. Dicker, No. 01-3605, 2002 WL 362920, *1 (8th Cir. Mar. 8, 2002) (pretrial detainee was not entitled to due process before being moved to administrative segregation because he was moved for "institutional security" and not for "punitive reasons")).

Here, Plaintiff has alleged only that he was placed in administrative segregation without any disciplinary reports not that he was placed in administrative segregation for disciplinary reasons. Thus, Plaintiff has not alleged facts to suggest he was entitled to any due process for a disciplinary reason before his placement in administrative segregation. His only potential claim for breach of his due process rights appears to be for failure to provide due process for an unjustified, undocumented punitive placement in administrative segregation, and the Court will provide Plaintiff an opportunity to amend his Complaint to plausibly allege such a claim.

**E. Equal Protection**

Plaintiff alleges Defendants violated his equal protection rights by subjecting him to changes in housing classifications without notices, reviews, or hearings that other similarly situated pretrial detainees receive. Filing No. 1 at 14. "The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473

11

U.S. 432, 439 (1985). Where, as here, a plaintiff has not alleged discrimination based on membership in a class or group, the Supreme Court's "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Mensie v. City of Little Rock, 917 F.3d 685, 692 (8th Cir. 2019) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff *in all material respects*." Robbins v. Becker, 794 F.3d 988, 996 (8th Cir. 2015) (emphasis supplied).

Here, Plaintiff has made no factual allegations whatsoever regarding other similarly situated individuals who have been treated more favorably. For instance, Plaintiff does not allege that there were other pretrial detainees who did not receive disciplinary reports but yet still received notice and a hearing before placement in administrative segregation. Rather, Plaintiff merely alleges that other pretrial detainees had the ADF's procedures, protocols, and policies applied to them, *see* Filing No. 1 at 14, but, as the Court explained above, § 1983 liability cannot be premised on failure to follow jail policy alone. As such, the Court finds the Complaint fails to state a plausible equal protection claim.

**F. Relief Sought**

Finally, Plaintiff seeks compensatory and punitive damages but does not allege he sustained any injuries. Filing No. 1 at 5. However, in order to recover more than nominal damages under the PLRA, a prisoner must allege or prove more than mental or emotional injury. *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018); 42 U.S.C. § 1997e(e) ("No

Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."). As such, to the extent Plaintiff does not allege any physical injury resulting from the allegedly violative acts, his claims for compensatory damages against all Defendants are barred under § 1997(e).

## IV. CONCLUSION

As currently pled, Plaintiff's Complaint suggests a potential due process claim against some defendants, but otherwise fails to allege sufficient facts to state a plausible claim for relief against Defendants. On the Court's own motion, Plaintiff will be given 30 days in which to file an amended complaint that states a plausible due process and/or equal protection claim against Defendants in their individual capacities. Plaintiff is advised that any amended complaint he files will supersede his original Complaint.

IT IS THEREFORE ORDERED that:

1. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff.

2. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

3. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an amended complaint.

4. The Clerk of Court is directed to set a pro se case management deadline using the following text: **July 6, 2023**: amended complaint due.

5. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

Dated this 6th day of June, 2023.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge